**Edward A. Merrill, OSB No. 013484**
E-mail: edward@merrilllawpc.com
**Merrill Law PC**
61 NW Oregon Ave STE 103 #1766
Bend, Oregon 97703
Telephone: (541) 382-7000
Facsimile: (541) 382-2311

Attorney for Plaintiffs

### UNITED STATES DISTRIC COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| FALLON LOGGINS AND HANA LOGGINS,<br><br>   Plaintiffs,<br><br> vs.<br><br>HEIRLOOM, INC., an Oregon Corporation,<br><br>   Defendant. | Case No. 3:23-cv-01866<br><br>**COMPLAINT**<br><br>(Fraud in the Inducement, Common Law Fraud and Breach of Contract)<br><br>**DEMAND FOR JURY TRIAL** |

For Plaintiffs, Fallon Loggins and Hana Loggins ("Loggins"), Complaint against

Defendant, Heirloom, Inc. ("Heirloom"), Loggins state and allege as follows:

### I.  PARTIES

1.

At all times material, Plaintiffs Fallon Loggins and Hana Loggins (herein Loggins) were

husband and wife and were residents of Austin, Texas.

Complaint - 1

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

2.

At all times material, Defendant Heirloom, Inc. (herein Heirloom) was an Oregon corporation with its principal place of business in Clackamas County, Oregon.

## II.    JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over Loggins' claims pursuant to 28 U.S.C. §1332 due to diversity of citizenship between the parties and the fact that the amount in controversy exceeds $75,000, exclusive of interests, costs, and attorney fees.

4.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because the Defendant is an Oregon corporation and the issues in this lawsuit occurred in Oregon.

## FACTUAL BACKGROUND

5.

At all times material herein, Heirloom was in the business of manufacturing and selling Tiny Homes.

6.

On or about October 2022, Loggins were interested in purchasing a tiny home and contacted Heirloom for that purpose.

7.

Loggins communicated with Kevin Bloodsaw, the Sales Manager at Heirloom, and ended up selecting a model and options and Kevin Bloodsaw communicated to Loggins on or about October 21, 2022, and suggested getting in Heirloom's build queue quickly so that Loggins could get their home before winter the next year.

Complaint  - 2

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

8.

Mr. Bloodsaw's communication on or about October 21, 2022, was consistent with what had been communicated to Loggins by Heirloom' employees up to that point: if you get in now, you can receive your home in 10 to 12 months (at the lengthy end of the spectrum) while also communicating verbally that construction could be done as early as within 90 days of commencement.

9.

On November 15, 2022, (herein Effective Date) Loggins entered into a Tiny Home Construction and Sale Agreement (herein Agreement) with Heirloom that was executed by Heirloom's President, Jeremy Killian (A copy of the Agreement is attached hereto as Exhibit A).

10.

The Agreement included a Tiny Home Trailer Length (ft.) of 8' x 28' with VIN Number: 1H9U11N3XNP663137.

11.

The Agreement required Heirloom to commence construction of Loggins' Tiny Home within 30 days after the Effective Date for the Agreement.

12.

The Agreement was a cash purchase by Loggins and called for an initial down payment from Loggins to Heirloom that was paid in two separate payments, $23,525.29 and $35,287.95, respectively.

13.

The payments referenced in paragraph 12 above, were made by Loggins on or about November 7, 2022, and on or about November 16, 2022, respectively.

Complaint - 3

14.

The Agreement called for a payment of $17,643.97 from Loggins upon completion of the trailer frame by Heirloom.

15.

The payment referenced in paragraph 14 above was billed on or about February 1, 2023, by Heirloom to Loggins and was subsequently paid by Loggins on or about February 3, 2023.

16.

On or about February 1, 2023, Loggins were also billed for 2 Interior Painted Walls in the amount of $600, which was paid by Loggins on or about February 2, 2023.

17.

The Agreement also called for an additional payment upon completion of the "rough-in" phase in the amount of $17,643.97.

18.

On or about April 13, 2023, Heirloom billed Loggins for the "rough-in" in the amount of $21,172.76, which Loggins paid on or about April 14, 2023.

19.

The Agreement also called for an additional payment upon the completion of the "wall cladding/wall closure" phase in the amount of $11,762.64.

20.

The Agreement also called for an additional payment upon the completion of Loggins' tiny home in the amount of $11,762.64.

///

///

Complaint - 4

21.

On or about April 13, 2023, Heirloom billed Loggins in the amount of $15,879.57 for what Heirloom classified as "15% Final Payment", which Loggins paid on or about April 14, 2023.

## FIRST CLAIM FOR RELIEF
### (Fraud in the Inducement)

22.

Loggins re-alleges and incorporates herein paragraphs 1-21 above.

23.

Despite the Agreement requiring Heirloom to commence construction of Loggins' tiny home they purchased within 30 days of November 15, 2022, Loggins learned on or about September 5, 2023, that construction was not started by Heirloom as of September 5, 2023.

24.

Heirloom billed Loggins as though it had performed in accordance with the Agreement.

25.

After making all of the payments to Heirloom as referenced above, Loggins were not receiving any updates about their tiny home, so Loggins began trying to get details from Heirloom and on or about May 19, 2023, Trine Rieck, an employee of Heirloom, responded to Loggins and indicated they were actively working on Loggins' tiny home, but no further details were provided.

26.

Loggins continued to inquire about the status of their tiny home after May 19, 2023, and when no information was forthcoming, Loggins began looking into Heirloom and were forced to hire legal counsel.

Complaint - 5

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

27.

After months of not receiving any news about their tiny home, on or about September 5, 2023, it was disclosed through Heirloom's counsel that Heirloom planned to start the build in "mid-to-late September" of 2023.

28.

Since Loggins began looking into Heirloom during the summer of 2023, Loggins have come to understand, upon information and belief, that Heirloom has had financial difficulties since before Loggins purchase and were behind on fulfilling customer orders before Loggins' Agreement with Defendant.

29.

On or about November 27, 2023, Heirloom's counsel disclosed that Heirloom's secured lender has filed a case in Clackamas County, Oregon Circuit Court and a Temporary Restraining Order has been issued preventing Heirloom from spending money on anything other than for approved budget line-items.

30.

Upon information and belief, Heirloom knew it was not in a financial situation and condition, with already existing past due orders and the then current financial situation of Heirloom, to begin construction of Loggins' tiny home within 30 days of the Effective Date as provided for in the Agreement.

31.

Heirloom entering into the Agreement with Loggins that, upon information and belief, Heirloom knew it was unable to begin construction within 30 days of the Effective Date was a

Complaint - 6

material misrepresentation that was false and made to induce Loggins to enter into the Agreement.

32.

Heirloom entering into the Agreement with Loggins that, upon information and belief, Heirloom knew it was unable to begin construction within 30 days of the Effective Date was unknown to Loggins and Loggins reasonably relied on Heirloom's representations in agreeing to enter into the Agreement.

33.

Upon information and belief, Heirloom knew it was not in a financial situation and condition, with already existing past due orders, to substantially complete construction within 12 months of the Effective Date of the Agreement at the time it entered into the Agreement with Loggins.

34.

Heirloom entering into the Agreement with Loggins that, upon information and belief, it knew it was not in a financial situation and condition, with already existing past due orders, to substantially complete construction within 12 months of the Effective Date of the Agreement and contracting to do so, was a material misrepresentation that was false and made to induce Loggins to enter into the Agreement.

35.

Heirloom entering into the Agreement with Loggins that, upon information and belief, it knew it was not in a financial situation and condition, with already existing past due orders, to substantially complete construction within 12 months of the Effective Date of the Agreement

Complaint - 7

61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

was unknown to Loggins and Loggins reasonably relied on Heirloom's representations in agreeing to enter into the Agreement.

36.

Had Loggins known of the financial conditions of Heirloom, late status of delivering on previous orders by Heirloom, and the inability of Heirloom to deliver on the contracted timelines, Loggins would not have entered into the Agreement.

37.

Plaintiffs relied upon the representations of Heirloom, when it agreed to enter into the Agreement and Loggins have suffered injury as a result of Heirloom's actions that constitute fraud in the inducement.

38.

As a direct and proximate result of the fraud in the inducement committed upon them by Heirloom, Loggins have suffered actual economic damages in the amount of $114,109.54, which is the total amount of their payments to Heirloom for the tiny home.

## SECOND CLAIM FOR RELIEF
### (Common Law Fraud)

39.

Loggins re-alleges and incorporates herein paragraphs 1-21, and 23-36 above.

40.

Despite not having begun construction, on or about April 13, 2023, Heirloom billed Loggins for "rough-in" completion.

///

///

Complaint - 8

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

41.

Despite not having completed the "rough-in" work, let alone even starting the build of

Loggins' tiny home, which was known by Heirloom, was billed to Loggins with the intent that

Loggins would rely and act upon on the billing statement for "rough-in" work being completed

and be deceived, thereby issuing payment for work that had not actually been completed.

42.

It was not known to Loggins that Heirloom had not completed the "rough-in" of Loggins'

tiny home when Heirloom billed Loggins and Loggins paid.

43.

Heirloom billing Loggins for "rough-in" completion, when it was not done and has not

been done, was a material representation that was false and unknown to Loggins and constitutes

common law fraud.

44.

On or about April 13, 2023, when Heirloom billed Loggins in the amount of $15,879.57

for what Heirloom classified as "15% Final Payment", which was $4,116.92 less than the

original contract amount, Heirloom indicated a 10% discount would be applied to the remaining

balances due if Loggins paid the final payment before construction was completed as provided

for in the Agreement.

45.

Heirloom, via its employee, Margo Dailey, intended to induce Loggins to rely on

Heirlooms representations when it was knowingly falsely claimed by Heirloom that the 10%

discount was being offered to customers who paid cash for their tiny home and would pay the

final invoice before their tiny home construction was completed as it was communicated as

Complaint - 9

Exciting News and an Equity Raise by Heirloom and falsely claimed that it was due to growth at Heirloom and was all done in the context that Loggins were falsely led to believe by Heirloom that construction was almost complete.

46.

As Loggins reasonably relied on Heirloom's representations and believed the "rough-in" to be complete and with the original statements that construction could be finished as early as within 90 days of construction commencement, Loggins were not concerned about agreeing to make the final payment early because construction would be completed very soon and they would get approximately $4K off the total price by making the final payment a few months early.

47.

Had Loggins known that construction had not commenced, which was known to Heirloom, Loggins would not have agreed to pay for the "rough-in" or the final payment amount.

48.

Had Loggins known that the construction had not been commenced within 30 days as required by the Agreement, they would have made no payments beyond the initial down payment and would have insisted on those payments being reimbursed.

49.

Upon information and belief, Heirloom still has not commenced construction of the tiny home despite having billed Loggins for the entirety of the tiny home.

50.

Loggins relied upon the material misrepresentation of Heirloom when Heirloom's employee, Margo Dailey, communicated the Exciting News email and offered the discount in

Complaint - 10

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

Paragraphs 44 and 45 above, in the context that construction was almost complete, in paying the bill and Loggins have suffered injury as a result of the common law fraud.

51.

Heirloom's communications through its employee, Margo Dailey, in Paragraphs 44 and 45 above, were material representations that were false and/or misleading and unknown to Loggins and constitute common law fraud.

52.

Heirloom billings to Loggins after the initial down payments, despite not having commenced construction of the tiny home, were material misrepresentations and intended by Heirloom to be relied and acted upon by Loggins who reasonably relied on billings being an indication that the work being billed had been completed and resulted in the Loggins suffering damages as a result of the common law fraud that was unknown to Loggins.

53.

As a direct and proximate result of the fraud committed upon them by Heirloom, Loggins have suffered actual economic damages in the amount of $114,109.54, which is the total amount of their payments to Heirloom for the tiny home.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

54.

Loggins re-allege and incorporate herein paragraphs 1-21, and 23-36.

55.

Heirloom is in breach of its Agreement with Loggins in one or more of the following particulars:

Complaint - 11

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000

a) by not commencing construction of Loggins' tiny home within 30 days of November 15, 2022;

b) by not substantially completing the work on Loggins' tiny home within 12 calendar months of November 15, 2022.

c) by billing Loggins for work that had not been completed;

d) by failing to disclose to Loggins that the work on Loggins' tiny home was not actually started.

56.

The Agreement provides for the prevailing party to be entitled to reasonable attorney's fees.

57.

As a direct and proximate result of the breach of contract by Heirloom, Loggins have suffered economic damages in the amount of $114,109.54.

WHEREFORE, Loggins pray for relief as follows:

1. First Claim for Relief (Fraud in the Inducement):

   a) For economic damages in the amount of $114,109.54;

   b) For costs and disbursements incurred herein;

   c) For such other relief as the court deems just and equitable.

2. Second Claim for Relief (Common Law Fraud):

   a) For economic damages in the amount of $114,109.54;

   b) For costs and disbursements incurred herein;

   c) For such other relief as the court deems just and equitable.

///

Complaint - 12

3. Third Claim for Relief (Breach of Contract):

   a) For economic damages in the amount of $114,109.54;

   b) For reasonable attorney's fees;

   c) For costs and disbursements incurred herein;

   d) For such other relief as the court deems just and equitable.

DATED this 12th day of December, 2023.

s/Edward A. Merrill
Edward A. Merrill, OSB No. 013484
E-mail: edward@merrilllawpc.com
Tel.: (541) 382-7000
Fax.: (541)382-2311

Attorney for Plaintiffs

Complaint - 13

MERRILL LAW, P.C.
61 NW Oregon Ave STE 103 #1766
Bend, OR 97703
(541) 382-7000



## Heirloom Inc.
# Tiny Home Construction and Sale Agreement

## I. Contract Parties

This Tiny Home Construction and Sale Agreement (this "Agreement") is made on ___11/15/2022___ (the "Effective Date"), between Heirloom Inc., an Oregon corporation ("Manufacturer"), and Client, as identified in this Section I, for the design and construction by Manufacturer of a custom recreational vehicle (the "Tiny Home").

**Client Name(s)**   Fallon and Hana Loggins

**Client Delivery Address**   409 W. 38th Street, Apt. 303, Austin, TX 78705

**Phone Number**   509.770.4694

**VIN Number**   1H9U11N3XNP663137

**Tiny Home Trailer Length (ft.)**   8' x 28'

## II. Contract Documents; Building Plans

The terms of this Agreement include the terms and conditions of the following additional documents, all of which are incorporated herein by reference:

1. Heirloom, Inc. Reservation Agreement, signed and dated ___N/A___;
2. Building Plans (defined herein) may be supplemented, amended or modified in accordance with a Change Order as defined herein;
3. Any Change Orders executed in accordance with this Agreement;
4. Heirloom, Inc. Limited Warranty

(collectively, the "Agreement Documents"). The construction and design documents, including the floor plan layout (the "Building Plans") have been and will continue to be prepared as necessary by Manufacturer and submitted to and approved by Client. After such approval, the Client may submit a request to edit, modify or alter Building Plans only at the consent of Manufacturer and in accordance with Section VI Change Orders. Manufacturer makes no representation about the quality of the Building Plans beyond those specifically provided in the warranty clause of this Agreement.

Manufacturer shall be deemed the author and owner of the Building Plans and shall retain all common law, statutory, and other reserved rights, including copyrights. Any distribution of the Building Plans for regulatory approval in connection with the building of the Tiny Home shall not be construed as publication in derogation of Manufacturer's reserved rights.

This Agreement shall prevail over any conflicting provisions in the Agreement Documents and any other documents, e-mails, or other communication, whether written or oral, between the parties with respect to the subject matter herein.

## III. Contract Price

The Contract Price consists of the base price for a Tiny Heirloom of this trailer length with standard finishes included in the base model, plus any additions, upgrades or modifications designated and agreed to in the Building Plans.

$ 104,895.00 (Base Price)
$ 1,850.00 (Upgrades and additions)
$ 9,381.46 (Taxes, Title, Registration, and Doc Fees)
$ 1,500.00 (Shipping - To the driveway)
**$ 117,626.46 Total "Contract Price"**

Exhibit A
Page 1 of 6

**The Contract Price is subject to increase as a result of any and all changes to the Building Plans as may be mutually agreed upon by the parties after the Effective Date and during the course of construction and memorialized in writing by a Change Order (as defined herein).**

After the execution of this Agreement, Client has already paid an initial down payment to the Manufacturer in the amount of $ _23,525.29_ , which is twenty percent (20%) of the Contract Price. After the execution of this Agreement, Client shall pay $ _35,287.95_ , which is thirty percent (30%) of the Contract Price. This payment will complete the 50% down payment requirement. Upon completion of the trailer frame by the trailer Manufacturer, Client shall pay $ _17,643.97_ , which is fifteen percent (15%) of the Contract Price. Upon completion of the "rough-in" phase (as described in the Buildings Plans), Client shall pay $ _17,643.97_ , which is fifteen percent (15%) of the Contract Price. Upon completion of the "wall cladding/wall closure" phase (as described in the Buildings Plans), Client shall pay $_11,762.64_ , which is ten percent (10%) of the Contract Price. Upon completion of the tiny home, Client shall pay $ _11,762.64_ , which is ten percent (10%) of the Contract Price (the "Remainder Amount"), **plus (ii) the total amount invoiced to Client from all unpaid Change Orders**, if any (collectively, the "Final Payment). Manufacturer shall prepare a final statement of the Final Payment for Client and such Final Payment shall be due upon completion of the build and prior to release of the tiny home.

**Delivery or Pick Up of the Tiny Home cannot be scheduled, and Client is not entitled to possession of the Tiny Home, until the Final Payment is paid in full to Manufacturer.**

If this Agreement is terminated by Client prior to the Completion Date, Client will be liable for any costs incurred by Manufacturer for actual labor, material, general construction fees, permits, any miscellaneous costs and fees or any other costs associated with overhead, over-time, and due to normal business practices in connection with the construction of the Tiny Heirloom, along with a termination fee in the amount of $ _23,525.29_ , which is twenty percent (20%) of the Contract Price.

## IV. The Work

Manufacturer shall furnish all labor and materials necessary to construct a Tiny Heirloom (previously and hereinafter, the "Work") for Client in accordance with the Building Plans. Manufacturer shall supervise and direct the Work, shall be responsible for coordinating all portions of the Work, and shall be responsible for and shall dictate all construction means, methods, techniques, sequences, and procedures.

## V. Commencement of Work & Time of Completion

Manufacturer will commence construction of Client's Tiny Heirloom within 30 days after the Effective Date and will substantially complete the Work (through delivery) within 12 calendar months of the Effective Date (the "Completion Date"). However, Manufacturer is not responsible for performance and construction delays beyond Manufacturer's control, including but not limited to: the actions, neglect or default of Client, acts of God, acts of war, vandalism, fire, shortages of materials or labor (from COVID-19), delays caused by governmental agencies and utility companies (from COVID-19), adverse weather that interferes with construction, or delays caused by Client extras and/or Change Orders (as defined below). The Completion Date shall be extended for a reasonable period equivalent to the time lost by reason of any or all of the aforementioned causes. Manufacturer is not liable for damages if substantial completion of the Work occurs subsequent to the Completion Date, except where delay of substantial completion of the Work is due to the act, neglect or default of Manufacturer and its employees, contractors, subcontractors, or others under its direction, control, or supervision. In no event shall Manufacturer be liable for consequential damages.

## VI. Change Orders

No changes from or additions to the Building Plans shall be made by Manufacturer or Client unless agreed to in writing under a change order in the form attached hereto as **Exhibit A** (a "Change Order"), and available electronically through BuilderTrend. Such agreed upon changes must be evidenced by an executed Change Order prior to the commencement of work or ordering materials related thereto. The increased cost of any Change Order Work shall be added to the Contract Price and shall be designated on the Change Order as an additional amount owed by Client. **Costs and fees incurred with a Change Order must be paid in full immediately after the Change Order approval date.** The Completion Date of the Work shall be changed, as applicable, by mutual agreement of the parties as evidenced within the Change Order, by the difference in the time required to complete the Change Order Work, plus any delays due to re-scheduling conflicts with Manufacturer's material suppliers and/or labor force.

Page **2** of 6

Exhibit A
Page 2 of 6

Notwithstanding the foregoing, upon prior notification to and approval by Client, Manufacturer shall have the right to substitute components and construction materials of equal or better quality and make minor design changes to the Building Plans which do not materially affect value. Certain requested changes or upgrades may not be feasible depending on the stage of construction, availability of materials or structural issues. All Change Orders are subject to the final approval of Manufacturer.

## VII. Late Payments

Payments not made within 7 days when due hereunder shall incur interest at the rate of 10 percent per year from the date the payment is due. If Client fails to pay Manufacturer within 7 days of the date payment is due, Manufacturer may, in its sole discretion, stop work and keep the job idle until such time as payments that are due to the Manufacturer are paid in full. If Manufacturer chooses not to stop work after a payment delay,

such choice shall not be construed as a waiver of its rights to stop work if future payments are delayed. All attorney fees incurred by Manufacturer to collect sums owed by Client shall be paid by Client, together with interest as provided for above.

## VIII. Access to the Property Site

Client shall have access to Manufacturer's facility during normal business hours and the right to inspect the Work in the presence of the Manufacturer. Client must give Manufacturer 48 hours' written notice before visit. If Client visits Manufacturer's facility, he or she he does so at his or her own risk, and Client hereby releases Manufacturer and does hereby hold Manufacturer harmless from any and all claims for injury or damage to his or her person or property, and to the person or property of any person accompanying Client. In the event that Client's Tiny Heirloom is a part of Manufacturer's television show Tiny Luxury, Client may not enter Manufacturer's facility at any time unless approved by Manufacturer.

## IX. Delivery

The Contract Price does not include delivery.  Upon completion of the build of Client's Tiny Home and receipt by Manufacturer of the Final Payment, the Delivery or Pick Up of the Tiny Heirloom to the Client's location will be scheduled.  Manufacturer will require a minimum of three (3) and up to five (5) business days after notifying the Client that the tiny home is complete for required testing for the final Quality Control process inspection prior to the delivery of the tiny home.

Delivery shall be scheduled for a reasonable date, but in no event shall Delivery be made later than 30 days after receipt by Manufacturer of the Final Payment (such 30-day time period, the "Delivery Window"). Notwithstanding the foregoing, road conditions, weather and other events outside of Manufacturer's control may cause delay in Delivery beyond the Delivery Window, in which case Manufacturer shall promptly notify Client of the delay in which Client shall use reasonable efforts to Deliver the Tiny Heirloom in a reasonable time. Manufacturer shall not be liable or responsible to Client, nor be deemed to have defaulted under or breached this Agreement for any failure or delay in delivering the Tiny Heirloom within the Delivery Window, when such failure or delay was caused by events outside of Manufacturer's control.

Manufacturer is not responsible for any dealings with the applicable Department of Motor Vehicles (or similar entity) besides providing a Manufacturer's Certificate of Origin to the Client upon Delivery. Upon Delivery, Client must sign the Heirloom Delivery Release form, unless Client has notified Manufacturer of an immediate deficiency.

**THE SALE OF THE TINY HEIRLOOM TO CLIENT UNDER THIS AGREEMENT IS FINAL. UNDER NO CIRCUMSTANCES IS CLIENT ENTITLED TO A REFUND OR TO RETURN OF THE TINY HEIRLOOM.**

Exhibit A
Page 3 of 6

## X. Inspection, Completion and Possession

Within 7 days of the date of Delivery, Client shall submit to Manufacturer a signed and dated list that identifies any alleged deficiencies in the quality of the work or materials used in building the Tiny Heirloom ("Deficiencies List"). Manufacturer shall correct any items on the Deficiencies List that are, in the good faith judgment of Manufacturer, deficient in the quality of the work and/or materials of the standards of Manufacturer. Manufacturer will correct such items within a reasonable period of time. If no Deficiencies List is furnished to Manufacturer within 7 days of the date of Delivery or Pick Up, Client shall be deemed to have accepted the Tiny Heirloom as-is. After any defects have been corrected according to the standards of Manufacturer, Client shall sign a certificate of acceptance acknowledging that the defects on the Deficiencies List have been corrected according to the standards of this Agreement, and thereinafter all claims for deficiencies shall be made as a warranty claim under the Limited Warranty.

## XI. Concierge Service

VIP Concierge service - This will include full setup, leveling, and provide instruction on final hookups and/or any 3rd party attachments needed once your tiny home has arrived at the agreed-upon delivery destination. Tiny Heirloom and/or its assignees will have full right and waiver of any liability to access the Client's property and are not held responsible for any normal wear and tear or incidental damages that may occur upon final delivery of the Client's tiny home. Services will include at least 1 team member from Tiny Heirloom and/or its assignees to meet with the property owner and/or tiny home Client of Tiny Heirloom at the said delivery site.

## XII. Disclaimer and Waivers

ELECTRICAL: 30A/50A electrical connection made by a provided 25' RV cord by Tiny Heirloom. Heirloom will make the connection from the Client's tiny home to the already-provided electrical box. Customer must make sure and ensure electricity is on and has been installed by a professional contractor and in full running service order.

WATER: Manufacturer will provide a single 25' heated RV hose and make the proper connection from the Client's tiny home to the Client's already-provided water service outlet. Clients must make sure and ensure that the water service is on and has been installed by a professional contractor and in full running service order.

SEWER/SEPTIC: Tiny Heirloom and/or its assignees will provide one (1) 3" portable service line between 15' - 25' that will be attached to the Client's tiny home and run to the nearest sewer connection provided by the Client's already-provided sewer service. Clients must make sure and ensure that the sewer service is on and has been installed by a professional contractor and in full running service order. In addition, Tiny Heirloom will also provide a proper sloped "sidewinder" to accommodate the Client's sewer line to provide adequate and proper drainage from the Client's tiny home to the sewer.

If applicable, Tiny Heirloom and/or its assignees will provide a minimum of one (1) RV rated propane tank and applicable regulator valve and proper supply lines for client's direct use for any Manufacturer-installed propane appliance or water heater and will be affixed with a propane kit to properly meet RV code.

Manufacturer will provide upon final delivery a digital .pdf copy of its FAQ's manual and will go over and outline any basic function and use, care and maintenance schedules with the Client, along with applicable builder's and manufacturer's Limited Warranty agreement

Any 3rd party or sub-contracted services will be hired to do said work at Tiny Heirloom's sole discretion and is between Tiny Heirloom and the Client. Client agrees to the full fiduciary responsibility of any 3rd party sub-contracted services. Tiny Heirloom and/or its assignees will make proper recommendations and provide any 3rd party or sub-contracted bids with a markup of 35% for any services the Client(s) may need to ensure access and proper delivery along with connections made upon the arrival of client's tiny home. If Client chooses to not hire Tiny Heirloom and/or its assignees, for any or all of these services, client fully understands that if Tiny Heirloom and/or its assignees cannot deliver the tiny home, it will be at the Client's full and sole financial responsibility and Tiny Heirloom will reserve the right to safely unload the Client's tiny home at the closest legal and accessible parking location and will not be required to refund any part of the Client's money and will be fully released from its fiduciary obligations and duties to the Client.

## XIII. Limited Warranty

Except as set forth, the Heirloom, Inc. Limited Warranty, the Manufacturer makes no further representations and warranties regarding product failures or defects for the Tiny Heirloom and is its own separate agreement.

## XIV. Disputes

Any dispute or claim that arises out of or which relates to this Agreement, or to the interpretation or breach thereof, or to the existence, scope, or validity of this Agreement, shall be resolved by a single arbitrator in accordance with the then effective arbitration rules of (and by filing a

claim with) the Arbitration Service of Portland, Inc., and judgment upon the award rendered pursuant to such arbitration may be entered in any court having jurisdiction thereof. The parties agree to be bound by this arbitration clause, and this arbitration clause shall not preclude any party from filing or asserting a statutory lien or from commencing suit to foreclose such lien, but the foreclosure suit shall be stayed until the rendering of the

arbitration award, which award shall be binding in such foreclosure suit as to all matters determined in arbitration, and the lien may then be foreclosed to the extent permitted by law.

In the event suit or action is brought, or an arbitration proceeding is initiated, to enforce or interpret any of the provisions of this Agreement, or that arise out of or relate to this Agreement, the prevailing party shall be entitled to reasonable attorney fees in connection therewith. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party shall be decided by the

arbitrator(s) (with respect to attorney fees incurred prior to and during the arbitration proceedings) and by the court or courts, including any appellate court, in which such matter is tried, heard, or decided, including a court that hears a request to compel or enjoin arbitration or to stay litigation or that hears any exceptions or objections to, or requests to modify, correct, or vacate, an arbitration award submitted to it for confirmation as a judgment (with respect to attorney fees incurred in such court proceedings).

## XIII. Primary Residence Agreement

Manufacturer does not build or sell any Travel Trailers, as defined in the Oregon Revised Statutes, for the purpose or use as a primary residence. The Travel Trailers produced by Manufacturer are for the use and purpose of temporary dwelling for an amount of time equal to or less than 49% of any calendar year.

## XIV. Miscellaneous

 **A.** <u>Binding Effect.</u> This Agreement is binding on and inures to the benefit of the parties and their respective heirs, personal representatives, successors, and permitted assigns.

 **B.** <u>Assignment.</u> Neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by any party without the prior written consent of the other party.

 **C.** <u>Notices.</u> All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, sent by facsimile (with confirmation), sent by e-mail (with confirmation of delivery), mailed by certified mail, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses or facsimile numbers (or at such other address or facsimile number as a party may designate by like notice to the other parties):

To Manufacturer:  Heirloom Inc.
      9109 SE 64th Avenue
      Portland, Oregon 97206
      Attn: Jeremy Killian
      E-mail: jeremykillian@tinyheirloom.com

To Client:    Fallon and Hana Loggins
      409 W. 38th Street, Apt. 303
      Austin, TX 78705
E-mail:     nbfallon@outlook.com; hanaalunaloggins@gmail.com

 Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by facsimile, e-mail or overnight delivery service.

 **A.** <u>Amendments.</u> This Agreement may be amended only by an instrument in writing executed by all the parties, which writing must refer to this Agreement.

 **B.** <u>Construction.</u> The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender

or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation."

Exhibit A
Page 5 of 6

C.      Counterparts; Transmittal.   This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement. At the request of any party, the parties will confirm electronically transmitted signatures by signing an original document.

D.      Further Assurances.   Each party agrees to execute and deliver such other documents and to do and perform such other acts and things as any other party may reasonably request to carry out the intent and accomplish the purposes of this Agreement.

E.      Governing Law.   This Agreement will be governed by and construed in accordance with the laws of the state of Oregon, without regard to conflict-of-laws principles.

F.      Severability.   If any provision of this Agreement is deemed to be invalid or unenforceable in any respect for any reason, the validity and enforceability of such provision in any other respect and of the remaining provisions of this Agreement will not be impaired in any way.

IN WITNESS WHEREOF, the parties have caused this Tiny Home Construction and Sale Agreement to be executed as of the Effective Date.

**MANUFACTURER:**

**HEIRLOOM INC.**

Signature: _Jeremy Killian_
D64785B9CEAD483...
Print Name: __Jeremy Killian__
Title: ____President____

**CLIENT:**

**Fallon Loggins**

Signature: _____
Print Name: __Fallon Loggins__
Date: __11/15/2022__

**CLIENT:**

**Hana Loggins**

Signature: _____
2337E152361149D...
Print Name: __Hana Loggins__
Date: __11/15/2022__

Exhibit A
Page 6 of 6